[No. 8537.]

MONTEZUMA WATER & LAND COMPANY v. McCRACKEN.

1. IRRIGATION—*Rates of Charge*, prescribed by the County Commissioners are subject to judicial control:

2. ——*Duty of County Commissioners to prescribe reasonable rates, is a continuing duty*. Where a rate prescribed by the board has been adjudged unreasonable, and its enforcement enjoined, it is no violation of the injunction for the board to immediately prescribe a reasonable maximum rate.

Where a rate of charge fixed by the board has been judicially declared unreasonable and confiscatory, the board will not be permitted to evade the effect of such judgment by declaring and establishing the same rate of charge, upon the same evidence.

3. ——*Presumptions.* A judgment had been entered declaring a rate of charge prescribed by the County Commissioners unreasonable and confiscatory. A little more than three months thereafter, the board, upon a second hearing, established the same rate. The court declined to indulge in presumptions in support of the second order.

*Error to Denver County Court.* Hon. W. C. Hood, Jr., Judge.

Mr. T. J. O'Donnell, Mr. J. W. Graham, and Mr. Canton O'Donnell, for plaintiff in error.

Messrs. Melville & Melville, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

The plaintiff in error was the, owner of an irrigation canal in the county of Montezuma, in this state, and of certain water rights, and was carrying in said canal waters for public use for irrigation. In April, 1895, upon the application of certain water users from the said canal, the Board of County Commissioners of Montezuma county undertook to and did, fix what the board held to be reasonable maximum rates for water to be delivered through the said canal to the water users therefrom, and among which was the defendant in error.

The rate was fixed at ninety dollars per cubic foot per second of time for the irrigation season. Afterward, and in 1902, upon the petition of the canal company, the Board of County Commissioners of said county was enjoined by the District Court from the enforcement of such maximum rates, for the reason the same were held to be unreasonable, and confiscatory. This judgment of the District Court was affirmed by this court, in *Montezuma County v. Montezuma W. & L. Co.,* 39 Colo. 166, 89 Pac. 794, where a more complete statement of the facts may be found.

This action is by the canal company to recover from the defendant McCracken, for water furnished and used for the years 1903, 1904, 1905 and 1906, and for the reasonable value thereof, alleged to be much greater than the rate fixed by order of the county commissioners, and judgment was rendered in favor of the plaintiff, canal company.

Upon appeal to this court the cause was heard and determined by the Court of Appeals, the judgment reversed and the cause remanded for further proceedings. 25 Colo. App. 280.

The only error considered by the Court of Appeals was the refusal of the trial court to permit the defendant to file an amended answer to the complaint. The amended answer set up a subsequent order of the Board of County Commissioners, purporting to fix a reasonable maximum rate to be charged by such canal company, precisely the same rate as that enjoined by the court, and which the defendant claims is the lawful rate, and which amount the pleadings concede to have been paid.

Afterward, and while this cause was pending in the trial court, the suggested amended answer was permitted to be filed, and the plaintiff filed its reply thereto. The reply admitted the action of the Board of County Commissioners on the 26th day of February, 1903, purporting to fix a maximum rate of ninety dollars, as compensation for water to be delivered by the canal company. Alleges the former action of the board fixing the identical rate, the action of the District Court enjoining such rate, the affirmance of such judgment by this court; that the said judgment was in full force and effect on the 26th day of February, 1903, upon which day the order of the board was entered, upon which defendant relies; alleges that there was no other or different evidence before the said board in relation to reasonable rates, than that upon

which the previous action of said board was based, and
that such rate, so based upon the same evidence, had
been set aside by the court and declared and adjudged
to be inadequate, unreasonable and confiscatory.

It is then alleged that the said action of the board
in 1903, was and is wholly contrary to law and in viola-
tion of the judgment of the court:

It is also charged that the said action of the board
of county commissioners of February 26th, 1903, was and
is the result of a conspiracy between the county commis-
sioners and the water users, including the defendant, and
for the purpose of avoiding the decree of the court. It
was further alleged that the said rate under the latter
order was never enforced as against any user of water
from said canal; that the defendant well knew that the
plaintiff would not abide by said order, and that the sum
so paid, was, by agreement of defendant, on account
only, and so waived all benefit under said order, and that
the defendant agreed to pay a reasonable price for the
service for each year. Demurrer to this replication was
sustained by the court and the matter is presented for
review upon such ruling.

Article 16, sec. 8 of the Constitution provides:

"The general assembly shall provide by law that
the board of county commissioners, in their respective
counties, shall have power, when application is made to
them by either party interested, to establish reasonable
maximum rates to be charged for the use of water,
whether furnished by individuals or corporations."

Statutory regulations for the enforcement of this
constitutional provision are provided by sections 1096,
3788, 3789 and 3791 Mill's Ann. Stats. 1912. Such maxi-
mum reasonable rates fixed by the board of county com-
missioners are subject to judicial control. *Wheeler v.*

*Northern Colo. Irr. Co.,* 10 Colo. 588, 17 Pac. 487, 3 Am. St. 603.

The question necessary to be determined in this case is whether or not when a Board of County Commissioners has fixed a maximum rate to be charged by such a public utility, and when such rate has been held by a court of competent jurisdiction, in a proper proceeding, to be unreasonable and confiscatory, and while such judgment is in full force and effect, may the Board of County Commissioners, upon precisely the same evidence, fix the same rate for such services to be charged by the utility.

In considering this question it must not be overlooked that the case in the 29th Colo., this case in the 25th Colo. App., were and now are to be determined from the pleadings. The demurrers in each case admit for the purpose, the truth of the pleadings so attacked. The allegations of the complaint considered by the court and under which it held the rate fixed by the board to be confiscatory, were as follows:

"That the entire amount received by plaintiff from all sources for the year 1898, was $5,476.23, and that the operating expenses and taxes for that year were $9,883.99; that for the year 1899 the entire revenue received was $6,210.55, and the operating expenses for that year were $7,310.19. The receipts and expenses for each year thereafter, up to and including the year 1901, showing that the taxes and operating expenses for the years 1898 and 1901, inclusive, exceeded the revenue for said years in the sum of $10,660.15."

It appears that the judgment of the District Court was entered on the 11th day of November, 1902, and the new order issued by the board of county commissioners on the 26th day of February, 1903, or slightly more than three months afterward, and it is urged that there could

have been no such change in conditions within this short period, as may justify the order of the board upon the second hearing; and also that such proceeding by the board to fix maximum rates to be charged by the utility was an invasion of the injunctive order. Neither of these propositions can be sustained. The most that can be said of this circumstance is that this court cannot indulge in a presumption that in such limited time there was depreciation in the value of plaintiff's plant, or a decrease in its operating and other expenses.

It is the continuing duty of the Board of County Commissioners, in the manner prescribed by law, to fix reasonable rates, and it is no violation of an injunctive order declaring a rate theretofore fixed unreasonable, for such board to immediately proceed in the manner provided by law to fix a reasonable maximum rate. The judicial power was exhausted when the court found the particular rate in question, under the testimony presented, to be unreasonable.

In the case of *C., B. & Q. R. Co. v. Dey*, (C. C.), 38 Fed. 656, the State Railroad Commission of Iowa, after the issuance of a temporary injunction, enjoining the commission from enforcing a schedule of rates, proceeded to a further hearing and determination of rates for the same classes of service, and it was charged by the complainant company, in a supplemental bill, that the commission was seeking to evade the force of the injunction, and to cast upon complainant a schedule of rates substantially the same as that enjoined. In reply to this contention it was said by Mr. Justice Brewer:

"First. Has there been an invasion of the injunction order heretofore issued, and therefore a practical contempt of that order? * * * With reference to the first question there is little room for doubt. In the injunction which was issued there was no assumption of

power to prescribe rates; and no pretense of interfering with the commissioners in the discharge of any duties imposed upon them by statute. The limits of judicial interference were, I think, clearly stated in the opinion filed. *Railway Co. v. Dey,* 35 Fed. Rep. 866 [1 L. R. A. 744]. Beyond that limit, as I said, the courts have no power to go; and the whole matter is relegated to the discretion of the commissioners. It would be strange indeed, after the various adjudications of the supreme court, if any court should assume to prescribe a schedule of rates. Again, the commissioners acted simply upon complaints filed. They could not abandon the duty cast upon them by the statute of receiving and acting upon such complaints.   *   *   *   And finally it must be observed that the question, what are reasonable rates, is—as perhaps none know better than these commissioners—one of exceeding intricacy and difficulty, and it would be strange indeed, if an honest effort on their part to solve that question in the discharge of their official duties could be denounced as an intentional contempt of judicial orders."

But in this case the pleading alleges and the demurrer admits, that there was no other or different evidence upon the second hearing than at the first, and that therefore, the order was based on the same state of facts considered by the court. If this be true, the second hearing was not for the good faith purpose of ascertaining and fixing a reasonable rate, but on the contrary was in effect a repudiation of the court's order and decree, declaring such rate, under the facts presented, to be unreasonable.

This the Board of County Commissioners had no power to do, and its said order was void. It must be held that the judgment of the court, considering the same evidence, and declaring the identical rate to be unrea-

sonable and confiscatory, was *res adjudicata*. Otherwise, there would be presented a case of battle door and shuttle cock, between the courts and the rate fixing power, each invading and usurping the lawful functions of the other. Such conduct, if permitted, can have no other effect than to nullify the spirit and purpose of the law, and to defeat rate regulation.

It is urged that the Court of Appeals decision, (25 Colo. App. 280, 137 Pac. 903), is in conflict with the view here expressed. While there are expressions in that opinion that may justify such conclusion, they were not necessary or important in the determination of the matter then before the court, and are not pursuasive here. The amendment to the answer considered in that case, pleaded a *prima facie* valid order. The attack upon its validity, here considered, was not before the Court of Appeals.

We do not deem it important or profitable to consider other errors assigned.

The judgment of the trial court is reversed with instruction to overrule the demurrer to the replication and to proceed as the parties may be advised.

White, J., and Garrigues, J., concur.

Decided January 2nd, A. D. 1917. Rehearing denied March 5, A. D. 1917.